UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN L.,<br><br>                           Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>                           Defendant. | Case No.: 23-cv-338-DDL<br><br>**ORDER AFFIRMING COMMISSIONER'S DECISION** |

    Plaintiff Ryan L. seeks judicial review of the Social Security Commissioner's denial of his application for disability benefits. *See* Dkt. No. 1. The parties have consented to the undersigned's jurisdiction. Dkt. No. 6. Plaintiff moves the Court to remand his application to the Social Security Administration for an award of benefits or, alternatively, for further proceedings. *See generally* Dkt. No. 15. For the reasons stated below, the Court finds the Commissioner's determination that Plaintiff is not disabled is free of legal error and supported by substantial evidence. The Commissioner's decision is therefore **AFFIRMED**.

---

[1]     Commissioner O'Malley is automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

I.

# BACKGROUND

**A.    Plaintiff's Application for Disability Benefits**

On January 30, 2020, Plaintiff filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), alleging his fibromyalgia, chronic pain, asthma, depression and other conditions rendered him unable to work as of June 19, 2015. *See* Certified Administrative Record ("AR") [Dkt. Nos. 9, 10] at 592, 628, 642, 684.[2] After his application was denied at the initial stage and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 29, 2021 before ALJ Eric Benham. *Id.* at 592, 608-627. Plaintiff appeared with counsel and gave testimony. *Id.* The ALJ issued an unfavorable decision on December 21, 2021,[3] having concluded Plaintiff "has not been under a disability, as defined in [the Act], from June 19, 2015, through the date of [the] decision." *Id.* at 601-02. On January 19, 2023, the Appeals Council denied review, and the ALJ's decision became final. *See id.* at 799-801.

**B.    Summary of the ALJ's Findings**

A person is considered "disabled" within the meaning of the Act if they suffer from a medically determinable physical or mental impairment which is expected to last at least a year and is of such severity that they cannot work, considering their

/ / /

/ / /

/ / /

---

[2]    The Court uses the parties' pagination of the AR. All other docket citations are to the CM/ECF page numbers.

[3]    Plaintiff erroneously identified the date of the ALJ's decision as December 16, 2021. Dkt. No. 15 at 2.

age, education, and work experience. *See* 42 U.S.C. § 423(d). The Administration employs a sequential five-step evaluation to make this determination.[4]

The ALJ followed this five-step process in adjudicating Plaintiff's disability claim. *See generally* AR at 589-607. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 19, 2015, the alleged date of onset of his disability. *Id*. at 594. At step two, the ALJ found Plaintiff had the following severe impairments: fibromyalgia syndrome; lumbar spine degenerative joint disease and degenerative disc disease; chronic pain syndrome; and asthma.[5] AR at 595. At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment. *Id*. at 597.

Proceeding to step four, the ALJ determined despite Plaintiff's impairments, he could:

---

[4]   The five-step sequential evaluation is the same for both disability insurance benefits and supplemental security income. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. The ALJ must determine the following: at step one, whether the claimant is engaged in substantial gainful activity; at step two, whether the claimant suffers from a severe impairment within the meaning of the regulations; at step three (if the claimant suffers from a severe impairment), whether the impairment meets or is medically equal to one of the impairments identified in the Listing of Impairments; at step four, the claimant's residual functional capacity ("RFC") based on all impairments and whether, given the RFC, the claimant can perform his or her past relevant work; at step five, whether the claimant can make an adjustment to other work based on his or her RFC. If the claimant is found not disabled at any step, the analysis does not proceed to the next step.

[5]   Plaintiff also suffers from gastroesophageal reflux disease ("GERD"), eosinophilic esophagitis, and obstructive sleep apnea, but the ALJ found "little evidence" that these conditions limited Plaintiff's ability to perform work activities and therefore deemed these conditions not severe. AR at 595. The ALJ likewise found Plaintiff's medically determinable mental impairments of attention deficit hyperactivity disorder, possible autism spectrum disorder, and depressive disorder were non-severe, finding the record did not demonstrate they caused "more than mild" limitations in the Paragraph B criteria. *Id*. at 595-96. Plaintiff does not challenge these findings. *See generally* Dkt. No. 15.

> perform a range of light work as defined in 20 CFR [§] 404.1567(b) and 416.967(b) as follows: lift as much as 20 pounds frequently; stand and walk 6 hours in an 8-hour day; sit 6 hours in an 8-hour day; would be limited to occasional stooping, crouching, kneeling, crawling, as well as climbing stairs, or ladders or scaffolds; [and should] avoid work in [any] environment that would expose him to concentrated extreme cold, vibrations, or pulmonary irritants.

AR at 598.

In formulating this RFC, the ALJ considered Plaintiff's subjective testimony regarding his limitations. *Id.* at 598-99. The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that the objective medical evidence did not support Plaintiff's allegations as to their limiting effects. *Id*. As discussed in more detail below, the ALJ noted Plaintiff's impairments were effectively treated with medications and other conservative measures, including behavioral therapy and physical rehabilitation. *Id*. at 599. The ALJ also noted Plaintiff's treatment history was "infrequent," and there was no evidence of progressively escalating treatments or "additional interventions" despite allegations of worsening pain and other limitations. *Id*. For the same reasons, the ALJ found Plaintiff's "statements about the level of pain associated with his impairments leading to . . . limited daily activities are not fully consistent with the objective medical evidence of record." *Id*.

The ALJ also considered the opinion evidence and prior administrative medical findings in the record. AR at 600. Based upon their review of the medical record, state agency medical consultants M. Mazuryk, M.D. and T. Do, M.D. both assessed Plaintiff as able to perform light work, subject to additional environmental limitations. *Id*. Consultative internist A. Kanner, M.D., opined Plaintiff was capable of medium work. Based on his review of the record and the consistency of the consultants' opinions with that record, the ALJ found the Drs. Mazuryk's and Do's assessments persuasive but found Dr. Kanner's opinion "less persuasive." *Id*.
/ / /

Having considered the record as described above, ALJ concluded:

> The above residual functional capacity assessment is supported by the totality of the evidence including the prior administrative medical findings from the state agency medical consultants and the consistent notation of normal physical examinations in the file. [Plaintiff] does have underlying impairments that do cause some symptoms of pain. However, the treatment provided that is only in the form of medications and the notation that being off medications for a few months only resulted in a 10% increase in the symptoms of pain without the need for further intervention shows [Plaintiff's] pain symptoms are not as significant as alleged.

*Id*. at 600-01.  Based on the above RFC and the testimony of the vocational expert, the ALJ further found at step four Plaintiff could perform his past relevant work as User Support Analyst as that position is generally performed in the national economy. *Id*. at 601.  Accordingly, the ALJ did not proceed to step five but instead concluded Plaintiff was not disabled within the meaning of the Act. *Id.* at 601-02; *see* 20 C.F.R. § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."); 20 C.F.R. § 416.920(a)(4)(iv) (same).

## II.
## DISPUTED ISSUES

The issue before the Court is whether the ALJ provided specific, clear and convincing reasons to reject Plaintiff's subjective assessment of the limiting effects of his impairments.  *See* Dkt. No. 15 at 4, 10.

## III.
## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F. 4th 732, 738 (9th Cir. 2023).[6]  The Court

---

[6]   All citations, internal quotation marks, and subsequent history are omitted unless otherwise noted.

"will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.* "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.* This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

## IV.
## DISCUSSION

**A.   The ALJ Did Not Err in Evaluating Plaintiff's Subjective Testimony**

### 1. Legal Standards

"[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review." *Brown-Hunter*, 806 F.3d at 494. In assessing whether to credit a claimant's subjective testimony regarding their functional limitations, the ALJ follows a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms

alleged." *Ferguson v. O'Malley*, --- F.4th ---, 2024 WL 1103364, at *3 (9th Cir. Mar. 14, 2024). When a claimant satisfies the first step, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony . . . only by offering specific, clear and convincing reasons for doing so." *Id.*; *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) ("an adverse credibility finding must be based on clear and convincing reasons").

The Ninth Circuit has explained that "the 'clear and convincing' standard . . . requires an ALJ to show his work." *Smartt*, 53 F.4th at 499. Requiring an ALJ to support their credibility determination with specific findings enables the reviewing court to determine whether the ALJ "arbitrarily discredit[ed] [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (noting that "the ALJ must provide sufficient reasoning" to "permit meaningful review"). If the ALJ does not provide sufficient reasons for rejecting the claimant's testimony, "then the ALJ's credibility determination is not supported by substantial evidence." *Ferguson*, 2024 WL 1103364, at *3. However, if the ALJ's credibility determination is adequately supported, this Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

The Administration has issued guidance for the evaluation of fibromyalgia-based disability claims. *See* Social Security Administration, Social Security Ruling 12-2p: Titles II and XVI: Evaluation of Fibromyalgia (2012) (hereafter "SSR 12-2p").[7] Fibromyalgia, the Administration explains, "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or

---

[7]     SSRs are the Administration's "precedent final opinions and orders and statements of policy and interpretations," and are binding on the ALJ although they "do not carry the force of law." *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

nearby soft tissues that has persisted for at least 3 months." *See id.* There is no objective test for fibromyalgia; for purposes of a disability claim, the impairment is established through the patient's subjective reports of pain and corroborated by either a physical examination of so-called "tender points" or the "repeated manifestation" of certain coextensive conditions, together with evidence that other potential causes of the patient's symptoms have been ruled out. *See generally* SSR 12-2p. "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods . . .." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Because a person with fibromyalgia "may have 'bad days and good days,'" the ALJ must "look[] at the longitudinal records" to the extent possible. *Id.* at 663.

A fibromyalgia diagnosis does not *per se* require a finding of disability, however. *See* SSR 12-2p (noting fibromyalgia "is not a listed impairment"). The ALJ is not bound by a claimant's subjective testimony, and can and should consider other medical and non-medical evidence to determine whether a claimant is rendered disabled by fibromyalgia. *See Diane B. v. Kijakazi*, No. 21-cv-00794-TSH, 2022 WL 94915, at *9 (N.D. Cal. Jan. 10, 2022) ("The Court is aware of no authority that requires an ALJ to give dispositive weight to [p]laintiff's symptom allegations simply because they were associated with fibromyalgia."). Indeed, SSR 12-2p directs the ALJ to consider the "longitudinal records" to "establish[] both the existence **and severity** of the impairment." *See* SSR 12-2p (emphasis added).

Furthermore, although Plaintiff focuses most of his argument on the unique nature of fibromyalgia, Plaintiff also alleged disability based on other impairments, some of which (namely, lumbar spine degenerative joint disease and degenerative disc disease, chronic pain, and asthma) the ALJ found to be severe. AR at 595. Whether Plaintiff's alleged disability is due to fibromyalgia or another impairment, the ALJ was required to employ the two-step process described above to evaluate

Plaintiff's subjective reports of the limiting effects of his impairments.  *See* SSR 12-2p; SSR 16-3p.

2. Application

Plaintiff asserts the ALJ's discrediting of Plaintiff's subjective symptom testimony reflects "a fundamental misunderstanding of fibromyalgia," and that the ALJ failed to appreciate the relationship between Plaintiff's fibromyalgia and his other conditions.  *Id.* at 7-8.  Plaintiff further asserts the ALJ's "rationale" for rejecting Plaintiff's symptom testimony is "insufficient" and that the ALJ "failed to articulate legally sufficient reasons for rejecting the testimony and fibromyalgia issues of [Plaintiff]."  Dkt. No. 15 at 10.  The Court disagrees.

After reviewing the evidence in the record, the ALJ determined Plaintiff's fibromyalgia, chronic pain, degenerative conditions in his lower back, and asthma could reasonably be expected to cause his alleged symptoms.  AR at 598.  However, the ALJ found the evidence in the record did not support Plaintiff's allegations regarding the extent to which those symptoms limited his ability to work.[8]  *Id.* at 599.  Insofar as the ALJ found Plaintiff's testimony credible, appropriate limitations were reflected in the RFC.  *Id.* at 600.

The Court turns first to the ALJ's assessment of Plaintiff's allegations of disabling pain and fatigue.  Plaintiff testified he was prevented from working because his "fatigue is quite severe," his fibromyalgia "makes standing [and] sitting quite painful" for anything "longer than 5 minutes," and his "fingers cramp up within minutes of doing any tasks . . . even holding a glass" or typing.  *Id*. at 613, 616.  Plaintiff stated if absolutely necessary, he might be able to lift 20 pounds but would

---

[8]     Plaintiff chides the ALJ for "clump[ing]" his symptoms together, Dkt. No. 15 at 7, but Plaintiff himself stated "all [his] medical conditions . . . compound[ed]" to prevent him from working.  AR at 612.  The Court finds it was appropriate for the ALJ to address Plaintiff's allegations of disabling pain and fatigue by reference to the severe impairments that caused those symptoms.

experience pain for "three or four hours" afterward, and to avoid pain and possible injury he should not lift "anything more than . . . two or three pounds." *Id*. at 617. Plaintiff further testified even performing small tasks like brushing his teeth or "scrubbing up in the shower" causes his muscles to "instantly feel like they're on fire." *Id.* at 617-18. Due to his pain and fatigue, "from the moment [he] wake[s] up," he will "get some food and . . . sit in the recliner pretty much all day until I go to bed." *Id*. at 618. He rarely leaves the house "because it's just too much, you know, just too painful and not really worth it." *Id*. at 621.

In finding these allegations less than credible, the ALJ identified that Plaintiff's fibromyalgia was effectively treated with medications, and discontinuing his medication "showed only a 10% increase in his pain symptoms." AR at 599; *see also id*. at 600-01 (noting Plaintiff's pain was treated "only in the form of medications and . . . being off medications for a few months only resulted in a 10% increase in symptoms of pain without the need for further intervention"). "Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits." *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ further noted that the treatment plan for Plaintiff's degenerative joint disease and degenerative disc disease was medication, behavioral therapy and rehabilitation. AR at 599. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ also noted that Plaintiff "infrequent[ly]" received treatment for his conditions. AR at 599. The ALJ may appropriately "consider lack of treatment in his credibility determination," *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005), and may reasonably conclude that "the level or frequency of treatment" is "inconsistent with the level of complaints." *Molina*, 674 F.3d at 1114. The ALJ further observed that despite an alleged worsening of Plaintiff's symptoms and "significantly limit[ed] function," there was no evidence in the record of escalating treatments or that

Plaintiff's conditions merited "additional intervention" beyond the medications and other conservative measures described. AR 599. The ALJ reasonably concluded that "minimal, conservative treatment" is inconsistent with Plaintiff's allegation that the pain and fatigue attributable to his impairments rendered him unable to work. *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999), *as amended* (June 22, 1999).

The ALJ also found that Plaintiff's allegations that his pain limited his daily activities were "not entirely consistent" with the objective medical record, which showed "normal" physical examinations outside of the "tenderness" noted during a 2015 examination. AR at 599. While the ALJ specifically identified reports of physical examinations in 2015 and 2019, he later observed that "the full medical evidence of record" consistently showed "normal examinations despite allegations of pain symptoms." *Id*. at 600. It is true that "subjective pain is not always verifiable through a physical examination." *Ferguson*, 2024 WL 1103364, at *4. However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498 (collecting cases) (emphasis in original). The ALJ found the consistently normal findings on physical examination over a period of years rendered Plaintiff's allegations that he could not sit upright, walk "down the street," or use his arms, hands or fingers without pain less than credible. *See* AR at 600-01, 616-18. This was a "significant and substantial reason[] to find [Plaintiff's] testimony less than completely credible." *Parra*, 481 F.3d at 750 (upholding ALJ's finding that subjective complaints of pain were contradicted by normal examination findings); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Turning next to Plaintiff's allegations of disabling asthma, Plaintiff testified that he wheezes and "become[s] short of breath" when the weather changes or in humid environments. AR at 614. Approximately once a week, he needs to use an

inhaler which "helps" but does not "fully resolve" his symptoms. *Id*. The ALJ identified that Plaintiff's asthma was described in the medical records as well-controlled and even "improving" with medication. *Id*. at 599. The ALJ also observed that Plaintiff's asthma was conservatively treated and required "no special intervention" beyond medications. *Id*. Finally, the ALJ noted that the lone pulmonary function test in the record was normal, indicating there were no "deficits" in Plaintiff's lung functioning. *Id*. (citing AR at 1710). For the same reasons discussed above, this evidence that Plaintiff's asthma was conservatively and effectively treated with medication (and nothing else) is a sufficient basis for adverse credibility determination. *See Smartt*, 53 F.4th at 500.

The ALJ also considered the medical opinions and prior administrative findings in the record. *See* AR at 600. At the initial and reconsideration levels, Drs. Mazuryk and Do, respectively, assessed Plaintiff as capable of light work with some additional environmental restrictions due to Plaintiff's asthma. *Id*. at 600. The ALJ found these assessments persuasive, noting Drs. Mazuryk and Do supported their conclusions with citations to "generally normal examinations" and that these findings were "consistent with the full medical evidence of record and are supported by the analysis in the disability determination explanation forms." *Id*. However, the ALJ found the consultative internist A. Kanner, M.D.'s opinion that Plaintiff was capable of medium work "less persuasive." *Id*. Although Dr. Kanner's opinion was "supported by the observations made during [a] consultative examination," the ALJ noted that a review of the "full medical evidence" provided context that could not be "fully examined and realized during this one-time examination." *Id*.

Based upon his consideration of the objective medical evidence and the opinions and prior administrative findings described above, the ALJ concluded that while Plaintiff "does have underlying impairments that do cause some symptoms of pain," the foregoing facts demonstrated Plaintiff's symptoms were "not as

significant as alleged." AR at 600-01. Contrary to Plaintiff's arguments, given this detailed review of the evidence, the Court is not persuaded that the ALJ improperly extrapolated one or two isolated unremarkable physical examinations to the entire record, or failed to base his assessment on an evaluation of the record as a whole. *See* Dkt. No. 15 at 6-7. Plaintiff's related assertion that he has "at least 11 tender points" and fibromyalgia-related symptoms of "significant fatigue," "widespread pain" and "difficulty sleeping" misses the mark.[9] *Id*. at 8. The ALJ agreed that Plaintiff has fibromyalgia, a severe impairment, as well as other severe impairments that cause him pain, fatigue and related symptoms. AR at 598-99. Rather, the ALJ concluded those symptoms were not disabling. *Id.* On the record before it, the Court cannot say that determination was arbitrary. *Thomas*, 278 F.3d at 958.

/ / /

---

[9]  Plaintiff's complaint that the ALJ did not address his pain, fatigue, and other "symptoms alleged by the fibromyalgia pain," Dkt. No. 15 at 8, is not well-taken. As Plaintiff acknowledges, his testimony was that *due to his pain* he had difficulty sitting, standing, using his hands, and sleeping. *Id*. at 8; *see also* AR at 616-618. For the reasons discussed herein, the ALJ devoted considerable discussion to Plaintiff's pain and fatigue and provided several clear and convincing reasons for rejecting Plaintiff's testimony regarding its the limiting effects. To the extent the ALJ was required to explicitly address each manifestation of Plaintiff's pain, the Court finds any error in that regard was harmless given the ALJ's provision of other, adequate reasons for rejecting Plaintiff's testimony. *See Callahan v. Kijakazi*, 657 F.Supp.3d 1368, 1387 (E.D. Cal. 2023) (finding harmless error where the ALJ "cited another clear and convincing reason for their credibility determination"); *accord Howland v. Saul*, 804 F. App'x 467, 470-71 (9th Cir. 2020) (error in discounting claimant's testimony was harmless where "the ALJ offered several specific, clear and convincing reasons for doing so"). The Court also notes Plaintiff did not give any testimony regarding "his depression," Dkt. No. 15 at 8, which in any event the ALJ deemed a non-severe impairment that did not cause more than mild limitations in functioning, a finding reflected in the RFC and not challenged in this appeal. *See* AR at 595-96, 597.

The Court finds the ALJ provided "specific, clear and convincing" reasons for his credibility determination, by "enumerat[ing] the objective evidence that undermine[d] [Plaintiff's] testimony," *Kitchen*, 82 F.4th at 739, and "explain[ing] why the medical evidence is *inconsistent* with the claimant's subjective testimony." *Ferguson*, 2024 WL 1103364, at *4 (emphasis in original). Stated simply, the ALJ "show[ed] his work." *Smartt*, 53 F.4th at 499.

## B.   Substantial Evidence Supports the ALJ's Decision

Having found the ALJ supported his credibility determination with clear and convincing reasons, the Court turns to the question of whether that determination, and the resulting finding that Plaintiff was not disabled, is supported by substantial evidence. The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence supports the ALJ's conclusions. A summary of that evidence follows.[10]

Office notes from a complete physical examination by Edward Yamada, M.D., dated June 18, 2015 document that Plaintiff complained of "joint pain" that had been ongoing for a year, "especially in the right ankle." AR at 1371. Examination of his musculoskeletal system revealed tenderness in the right ankle but none in the left, nor in the left or right elbows, wrists, knees, or hands. *Id.* at 1375. His examination was otherwise normal. *Id.* Dr. Yamada assessed Plaintiff with bronchospasm (improved), chronic sinusitis, joint pain, GERD, depression

---

[10]   Plaintiff alleges disability as of June 19, 2015, and last met the insured status requirements of the Act on June 30, 2016 (the "last date insured"). AR at 592. Therefore, and as correctly noted by the ALJ, to be eligible for disability insurance benefits, Plaintiff must have been disabled on or before that date. *See id.*; *accord* 42 U.S.C. § 416(i)(2) and (3) (defining "period of disability" and eligibility requirements). Plaintiff's application for supplemental security income is not tethered to his last date insured. *See* 20 C.F.R. § 406.202 (defining eligibility).

and obstructive sleep apnea, ordered several lab tests, and instructed Plaintiff to follow up in one year. *Id.* at 1376. On June 24, 2015, Dr. Yamada made a note following what appears to be a discussion with an unnamed rheumatologist that the specialist "doesn't think pt has rheum sx." *Id.* at 1402; *see also id.* at 1507 (Dr. Yamada's August 2015 note that a rheumatologist he spoke with in June "didn't think pt's condition was outwardly rheumatological").

Dr. Yamada examined Plaintiff again on August 27, 2015, for complaints of joint pain. AR at 1503-09. On examination, Plaintiff exhibited tenderness in his right and left elbows, right and left upper and forearms, and mild tenderness in his right and left upper legs. *Id.* at 1506-07. Findings for his wrists, knees, ankles, back (cervical, thoracic, and lumbar), and hands were benign. *Id.* Dr. Yamada diagnosed Plaintiff with "myalgia and joint pain" and ordered lab tests. *Id.* at 1507, 1512-17. On September 3, 2015, Dr. Yamada informed Plaintiff that his "labs are normal" and revealed "no evidence of rheumatological disease." *Id.* at 1524.

On September 8, 2015, Dr. Yamada reiterated to Plaintiff, "[y]our inflammatory tests are normal and rheumatological markers are negative so I don't have any explanation for your muscle and joint pain. You don't quite fit the criteria for fibromyalgia." AR at 1518. Further lab tests were also normal. *Id.* at 1534-36. Dr. Yamada diagnosed Plaintiff with chronic pain syndrome and prescribed Cymbalta. *Id.* Plaintiff reported to Dr. Yamada on September 29, 2015 that the Cymbalta was effective: "I do notice a difference for the better. This is really amazing!! Most of the pain while resting is gone. If I start doing some work, the pain returns, but is not as strong as before." *Id.* at 1561.

Plaintiff continued to report in 2017 that Cymbalta "relieved 90% [of his] pain" and again in 2019 that Cymbalta "helps a lot" with his pain. *Id.* at 1690, 1901. Starting in 2019, Plaintiff was also prescribed meloxicam, pregabalin (Lyrica) and gabapentin (Neurontin) for his pain. *Id.* at 1920, 1947, 1953. In 2017, Plaintiff had a "neg[ative] rheum[atology] eval[uation]" despite complaints of joint pain. *Id.* at

1718. Plaintiff's physical examinations were largely normal, and Plaintiff denied pain at office visits during this period. AR at 1637, 1834. By 2019, Plaintiff's physician determined he had fibromyalgia based on positive findings of back pain, joint pain and myalgias. *See id*. at 1691, 1902. In 2020, Plaintiff ceased all pain medications to participate in a fibromyalgia study, and "[o]nly had increase in pain 10% getting off meds." *Id*. at 2027. After the study ended, Plaintiff resumed taking Cymbalta. *Id*.; *see also id.* at 615 (Plaintiff's hearing testimony that medication "helped [him] with pain and fatigue" and he anticipated restarting Lyrica at "a proper dose" to increase its efficacy).

In 2020, the state agency medical consultant noted upon initial review of the medical record that between the alleged onset date and Plaintiff's last date insured, Plaintiff received "routine" care for his joint pain and asthma, and his "rheumatology labs were normal." *Id*. at 659, 673-74. Following Plaintiff's fibromyalgia diagnosis, he was treated with medications, his "general physical exam is unremarkable," and Plaintiff "remains able to drive, do light housework, and is ambulatory" without assistance. *Id*. at 659, 673-74. On reconsideration, another state agency medical consultant also noted that despite "ongoing issues due to fibromyalgia," Plaintiff's activities of daily living demonstrated he remained "functional," and able to work subject to certain limitations. *Id*. at 693.

In March 2021, Plaintiff was seen by his primary care physician, who noted Plaintiff's back pain and fibromyalgia were "stable." AR at 2152-54. Physical examination was positive for back pain. *Id*. at 2153. An x-ray of Plaintiff's lumbosacral spine taken the same day showed degenerative disc disease at L5-S1. *Id*. at 2158. On a March 30, 2021 follow up with a physical medicine specialist, reported that he had "pain across the lower back . . . daily and all the time." *Id*. at 2261. Plaintiff further stated sitting, standing and walking were all painful for him, but denied numbness or tingling associated with his back pain. *Id*. Examination revealed tenderness to palpation of more than 11 of 18 fibromyalgia trigger points.

*Id*. at 2262. The specialist recommended guided injections. *Id*. at 2263. On April 19, 2021, chronic pain specialist G. Goldwaser, Ph.D. recommended "education" and cognitive behavioral therapy to address Plaintiff's complaints of pain. *Id*. at 2409-11. The consultative examiner's report of her September 2021 examination documents findings of tenderness at 10 out of 18 fibromyalgia trigger points, and a lower back examination that was "within normal limits." *Id*. at 3045.

The objective medical record also demonstrates that Plaintiff's asthma was well-controlled with an inhaler and other medications, by both subjective report and objective findings. *See, e.g.*, AR at 1362 (Plaintiff's self-report of asthma "symptoms" which were alleviated by use of an albuterol inhaler); 1691 ("intermittent asthma" under "good control"), 1901 ("seasonal" asthma relieved by medication), 2152 ("asthma stable no wheezing or s[hortness] o[f] b[reath]"). Plaintiff variously reported that exposure to "strong chemicals," high humidity and air conditioning worsened his symptoms. *Id*. at 1437, 1499, 1699. However, pulmonary function tests and sinus imaging were normal. *Id*. at 1710, 1437, 1455. Plaintiff's pulmonologist informed Plaintiff on January 31, 2017 that the results of his "breathing tests" were "normal," which did not "exclude asthma . . . [but] usually means there is not severe or uncontrolled asthma." *Id*. at 1714. The September 2021 consultative examination report documents an increased respiratory rate with exertion, without evidence of shortness of breath or wheezing. *Id*. at 3042, 3045.

The Court finds the foregoing is relevant and substantial evidence adequate to support the ALJ's adverse credibility assessment, and the subsequent determination based on Plaintiff's RFC that he was not disabled. Accordingly, the ALJ's decision will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ."); *see also* 42 U.S.C.A. § 405(g) (providing that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## V.

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's decision was not legally erroneous and was supported by substantial evidence. Plaintiff's request for reversal and remand is therefore **DENIED**. The final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED.**

Dated: March 26, 2024

     Hon. David D. Leshner
     United States Magistrate Judge